*223 BORRELLO, P.J.
Defendant, Allan Wayne Shank, appeals by delayed leave granted[1] his sentence following his guilty pleas to being a felon in possession of a firearm (felon-in-possession), MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm) MCL 750.227b. The trial court sentenced him as a fourth-offense habitual offender,[2] MCL 769.12, to 12 to 25 years’ imprisonment for his felon in possession conviction and a consecutive term of two years’ imprisonment for his felony-firearm conviction. In consideration of our recent ruling in People v Steanhouse, 313 Mich App 1; 880 NW2d 297 (2015), we remand the matter to the trial court.
I. FACTS
Police officers received disturbing information that Jerry Hilliard, a prison inmate, had sent an eight-year-old child a gift and card through Shank, who had been in prison with Hilliard and who has previous convictions of accosting minors for immoral purposes. During the investigation, officers discovered that Hilliard had requested that Shank take a photograph of the child posing in only a necklace. While executing a warrant, officers found a Winchester pump .22 caliber rifle in Shank’s hall closet. Officers also found evidence that Shank had sent Hilliard a photograph of what appeared to be a pregnant seven-year-old child and discovered in Shank’s photo album a photograph of a 5-year-old girl exposing her vaginal area. Shank denied that the photograph belonged to him.
Shank pleaded guilty to felon-in-possession and felony-firearm, and the prosecution dropped a charge *224 of possession of child sexually abusive material, MCL 750.145c(4). The sentencing guidelines recommended a minimum sentence of 7 to 46 months’ imprisonment for Shank’s felon in possession conviction. The trial court decided to depart upward, instead sentencing Shank to 12 to 25 years’ imprisonment. It gave several reasons for its departure, including that Shank did not have much rehabilitative potential given that he had been frequently incarcerated for reoffending, had violated probation and parole, and had received misconduct citations in prison. The trial court also relied on the concerning nature of Shank’s noncriminal behavior. The trial court explained that Shank was “assisting his prison mates in making contact with young children outside the prison system. He’s starting to groom children in spite of having served these long sentences .... There’s been just no rehabilitation at all.”
II. STANDARDS OF REVIEW
This Court, in Steanhouse, considered the effect of People v Lockridge, 498 Mich 358; 870 NW2d 502 (2015), on departure sentences. Steanhouse holds that under Lockridge, this Court must review a defendant’s sentence for reasonableness. Steanhouse, 313 Mich App at 42, citing Lockridge, 498 Mich at 365, 392, which cited United States v Booker, 543 US 220, 261, 264; 125 S Ct 738; 160 L Ed 2d 621 (2005). Hence, when the trial court departs from the applicable sentencing guidelines range, this Court will review that sentence for reasonableness. Lockridge, 498 Mich at 392. However, as stated in Steanhouse, “The appropriate procedure for considering the reasonableness of a departure sentence is not set forth in Lockridge.” Steanhouse, 313 Mich App at 42. After discussion of the approaches Michigan appellate courts should employ *225 when determining the reasonableness of a sentence, this Court adopted the standard set forth by our Supreme Court in People v Milbourn, 435 Mich 630; 461 NW2d 1 (1990). Steanhouse, 313 Mich App at 42-48.
Ill. PRINCIPLE OF PROPORTIONALITY
Under Milbourn, “a given sentence [could] be said to constitute an abuse of discretion if that sentence violate [d] the principle of proportionality, which require [d] sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender.” Milbourn, 435 Mich at 636; see also Steanhouse, 313 Mich App at 44-45. In accordance with this principle of proportionality, trial courts were required to impose a sentence that took “into account the nature of the offense and the background of the offender.” Milbourn, 435 Mich at 651. As stated in Milbourn:
Where there is a departure from the sentencing guidelines, an appellate court’s first inquiry should be whether the case involves circumstances that are not adequately embodied within the variables used to score the guidelines. A departure from the recommended range in the absence of factors not adequately reflected in the guidelines should alert the appellate court to the possibility that the trial court has violated the principle of proportionality and thus abused its sentencing discretion. Even where some departure appears to be appropriate, the extent of the departure (rather than the fact of the departure itself) may embody a violation of the principle of proportionality. [Id. at 659-660.]
As set forth in Steanhouse, “[f]actors previously considered by Michigan courts under the proportionality standard included, among others, (1) the seriousness of the offense; (2) factors that were inadequately *226 considered by the guidelines; and (3) factors not considered by the guidelines . . . Steanhouse, 313 Mich App at 46 (citations omitted).
In this case, the trial court did not have the benefit of our Supreme Court’s decision in Lockridge or this Court’s decision in Steanhouse. Rather, the trial court’s sentencing departure centered on the substantial-and-compelling-reason standard that was later overturned by Lockridge. Accordingly, in conformity with this Court’s decision in Steanhouse, we must remand this matter to the trial court for a Crosby[3] hearing. “[T]he purpose of a Crosby remand is to determine what effect Lockridge would have on the defendant’s sentence so that it may be determined whether any prejudice resulted from the error.” People v Stokes, 312 Mich App 181, 200-201; 877 NW2d 752 (2015). Also, under Stokes, the defendant is provided with an opportunity to avoid resentencing by promptly notifying the trial judge that resentencing will not be sought. Id. at 201, quoting Lockridge, 498 Mich at 398.
We remand this case to the trial court to follow the Crosby procedure outlined in Lockridge. Because defendant may be sentenced to a more severe sentence, defendant “may elect to forgo resentencing by providing the trial court with prompt notice of his intention to do so. If notification is not received in a timely manner, the trial court shall continue with the Crosby remand procedure as explained in Lockridge” and Steanhouse. Stokes, 312 Mich App at 203 (citations and quotation marks omitted).
We remand the matter for further proceedings consistent with this opinion. We do not retain jurisdiction.
*227 HOEKSTRA, J., concurred with BORRELLO, P.J.

 People v Shank, unpublished order of the Court of Appeals, entered June 12, 2014 (Docket No. 321534).

 This status increased Shank’s possible maximum term of imprisonment to life imprisonment. MCL 769.12(l)(b); MCL 750.227b(l).

 See Lockridge, 498 Mich at 395-399, citing United States v Crosby, 397 F3d 103 (CA 2, 2005).