# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

SHETOAN DANNARD COATES,

       Defendant-Appellant.

UNPUBLISHED
September 22, 2016

No. 327501
Ingham Circuit Court
LC No. 14-000491-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

SHELTON COATS,

       Defendant-Appellant.

No. 327902
Ingham Circuit Court
LC No. 14-000399-FC

---

Before: JANSEN, P.J., and K. F. KELLY and O'BRIEN, JJ.

PER CURIAM.

Defendants, Shetoan Coates and Shelton Coats, were tried before a single jury for the shooting and assault of Melvin Taylor. The jury convicted Shetoan Coates of assault with intent to commit murder (AWIM), MCL 750.83, assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84, carrying a concealed weapon (CCW), MCL 750.227, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced Shetoan Coates to concurrent prison terms of 20 to 80 years for the AWIM conviction, five to ten years for the AWIGBH conviction, and two to five years for the CCW conviction, all of which were to be served consecutive to a two-year term of imprisonment for the felony-firearm conviction. The jury convicted Shelton Coats of AWIGBH, CCW, felon in possession of a firearm (felon-in-possession), MCL 750.224f, and felony-firearm. The trial court sentenced Shelton Coats as a second-offense habitual offender, MCL 769.10, to concurrent prison terms of six to 15 years for the AWIGBH conviction and two to seven-and-a-half years each for the CCW and felon-in-possession convictions, all of which were to be served consecutive to a two-year term of imprisonment for the felony-firearm conviction. Shetoan

-1-

Coates appeals as of right in Docket No. 327501, and Shelton Coats appeals as of right in Docket No. 327902. We affirm each defendant's convictions, affirm Shelton Coats's sentences, and remand for further proceedings as it relates to Shetoan Coates's sentences.

## I. FACTUAL & PROCEDURAL BACKGROUND

Defendants' convictions arise out of a dispute between members of the Block Burners gang and members of the rival 269 Duece gang in Lansing. On March 5, 2014, two days before the charged offenses were committed, complainants Melvin Taylor and Dionel White-Beard, members of the 269 Duece gang, committed a drive-by shooting at a home where defendants, members of the Block Burners gang, apparently resided. Taylor and White-Beard committed a similar shooting at the same home two days later, on the morning of March 7, 2014. That same day, Taylor and White-Beard also shot at a vehicle in which Shelton Coats and his girlfriend were riding.[1] The instant convictions arise from defendants' subsequent acts when they observed the complainants at a roadway intersection later that day. The two defendants and codefendant Quendarious Johnson were in one vehicle, and the two complainants were in another vehicle. Defendants engaged the complainants in a high-speed chase, pursuing them through a residential neighborhood while shooting at their vehicle. Taylor, who was driving, eventually lost control of his vehicle and crashed. When Taylor fled on foot, defendants chased after him, eventually caught up to him at a car wash, and then physically assaulted him, striking him in the head with a gun. The defendants left as the police approached the scene but were apprehended a short time later.[2] Shetoan Coates and Shelton Coats were convicted and sentenced as described above, and these appeals followed.

## II. DOCKET NO. 327501 (SHETOAN COATES)

### A. CONSECUTIVE NATURE OF SENTENCE FOR FELONY-FIREARM

On appeal, Shetoan Coates argues that he is entitled to resentencing or the correction of his judgment of sentence because the trial court erroneously ordered that his sentences for the AWIGBH and CCW convictions run consecutively to his sentence for the felony-firearm conviction. The prosecutor concedes that the correction of Shetoan Coates's judgment of sentence is necessary due to this error. Accordingly, we remand this matter for the ministerial task of correcting Shetoan Coates's judgment of sentence in this regard. See, e.g., *People v Taybron*, 486 Mich 899; 780 NW2d 795 (2010).[3]

---

[1] Taylor and White-Beard were separately convicted of various offenses for their earlier acts that day.

[2] Johnson was also charged in relation to the March 7th shooting and assault. He later pleaded guilty to AWIM and felony-firearm and is not involved in this appeal.

[3] We reject Shetoan Coates's claim that resentencing, as opposed to the ministerial task of correcting his judgment of sentence, is required due to the erroneous consecutive nature of his

## B. *PEOPLE V LOCKRIDGE*

Shetoan Coates also argues that he is entitled to resentencing because judicially found facts were used to score offense variables (OVs) 3, 4, 9, and 14 in violation of the Sixth Amendment. Again, the prosecutor concedes that the trial court did, in fact, rely on judicially found facts in scoring various OVs. Accordingly, we remand this matter for further proceedings pursuant to *People v Lockridge*, 498 Mich 358, 394-399; 870 NW2d 502 (2015). See, e.g., *People v Shank*, 313 Mich App 221, 225-226; 881 NW2d 135 (2016).[4]

## C. ADMISSION OF GANG-AFFILIATION TESTIMONY

Lastly, Shetoan Coates argues that he was deprived of his constitutional right to a fair trial based on the admission of gang-affiliation testimony. Specifically, Shetoan Coates argues that the trial court erred in admitting evidence regarding his membership in the Block Burners gang because that evidence was irrelevant and unfairly prejudicial. We disagree.

We review a trial court's decision to admit or exclude for an abuse of discretion. *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013). An abuse of discretion occurs when a trial court chooses an outcome that falls beyond the range of principled outcomes. *People v Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010). "Preliminary questions of law, including whether a rule of evidence precludes the admission of evidence, are reviewed de novo." *Burns*, 494 Mich at 110.

In this case, the trial court did not abuse its discretion in allowing the challenged evidence. The evidence was admissible under MRE 404(b)(1), which permits evidence of a defendant's uncharged prior bad acts or conduct when offered for a purpose other than to prove the character of a person in order to show action in conformity therewith. In order for other-acts evidence to be admissible under MRE 404(b)(1), the prosecution must demonstrate the following: (1) that the evidence is being offered for a proper purpose, i.e., to prove something other than defendant's criminal propensity; (2) that the evidence is relevant; and (3) that the evidence is not unfairly prejudicial under MRE 403. *People v Knox*, 469 Mich 502, 509; 674 NW2d 366 (2004); see also *People v VanderVliet*, 444 Mich 52, 74-75; 508 NW2d 114 (1993). If admitted, the trial court may also provide a limiting instruction upon a defendant's request. *VanderVliet*, 444 Mich at 75.

We agree with the trial court that the evidence of defendants' gang membership was relevant to the issues of motive and intent, which are proper non-character purposes under MRE 404(b)(1). Although motive is not an element of AWIM, evidence of motive is relevant in determining whether a defendant acted with the intent to kill or to do great bodily harm. See

---

sentences. He provides no authority to support this assertion, and we have found none supporting it. Nevertheless, as discussed below, resentencing may occur pursuant to *Lockridge*.

[4] Nevertheless, it should be noted that Shetoan Coates does not argue that OVs 3, 4, 9, and 14 were improperly scored under a preponderance-of-the-evidence standard. That is, Shetoan Coates argues only that the trial court relied on judicially found facts in scoring these OVs in violation of the Sixth Amendment.

*People v Unger*, 278 Mich App 210, 223; 749 NW2d 272 (2008). The prosecutor sought to prove that the motive for the shooting was related to the defendants' and the complainants' gang memberships as well as the accompanying gang-related behavior of attacking each gang's members. The evidence of gang membership provided the factual context for understanding the hostility between defendants and the complainants, and it was relevant to explain why defendants would commit an otherwise inexplicable act. *People v Fisher*, 449 Mich 441, 453; 537 NW2d 577 (1995). Because the evidence was relevant to the issues of motive and intent, which are recognized non-character purposes for admitting evidence under MRE 404(b)(1), the trial court did not abuse its discretion in ruling that the evidence qualified for admission under that rule.[5]

Further, the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. All relevant evidence is inherently prejudicial. *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995), mod 450 Mich 1212 (1995). To be subject to exclusion under MRE 403, there must be a probability "that evidence which is minimally damaging in logic will be weighed by the jurors substantially out of proportion to its logically damaging effect" such that "it would be inequitable to allow the proponent of the evidence to use it." *Id*. at 75-76 (internal quotation marks omitted). Evidence is unfairly prejudicial when it causes the jury to consider issues extraneous to the merits of the case, such as bias, sympathy, anger, or shock. *People v Cameron*, 291 Mich App 599, 611; 806 NW2d 371 (2011). Evidence is also unfairly prejudicial if there is a danger of confusing the issues, misleading the jury, or the needless presentation of cumulative evidence. *People v Watkins*, 491 Mich 450, 489; 818 NW2d 296 (2012).

Evidence of a defendant's gang membership risks causing a jury to conclude that the defendant "acted in conformity with the character traits commonly associated with gang members on a particular occasion." *People v Bynum*, 496 Mich 610, 630; 852 NW2d 570 (2014). In this case, however, the prosecutor did not offer the evidence of the defendants' gang membership for an improper propensity purpose or to inflame the jurors; rather, the prosecutor offered the evidence to explain the reason for the hostility between the defendants and the complainants, thereby establishing a motive for the shooting at issue. To the extent that the evidence could be viewed as prejudicial, it was not unfairly prejudicial, and any prejudicial effect did not substantially outweigh the probative value of the evidence, especially in light of the trial court's limiting instruction. Accordingly, the trial court did not abuse its discretion in admitting evidence of defendants' gang membership.

## III. DOCKET NO. 327902 (SHELTON COATS)

---

[5] Shetoan Coates argues that the prosecutor improperly relied on a "res gestae" theory of admissibility. On appeal, he correctly observes that our Supreme Court has held that there is no "res gestae exception" to MRE 404(b)(1). See *People v Jackson*, 498 Mich 246, 266-272; 869 NW2d 253 (2015). However, the prosecutor provided the necessary pretrial notice of its intent to introduce the evidence as required by MRE 404(b)(2), and the trial court determined that the evidence was admissible for proper, non-character purposes under MRE 404(b)(1). Thus, any reliance by the trial court on the now-defunct "res gestae exception" does not compel reversal.

## A. OTHER-ACTS EVIDENCE UNDER MRE 404(B)

On appeal, Shelton Coats similarly argues that the trial court erred in admitting other-acts evidence pursuant to MRE 404(b). Specifically, Shelton Coats argues that the trial court erred in admitting "rival gang affiliations amongst the parties involved including past disputes." These included "a 'drive-by shooting' which was Melvin Taylor and his friend Dionel White Beard shooting at a house where Shelton Coats and his nephew Shetoan Coates were staying" and Taylor's "previous[] . . . gunplay with Shelton Coats as they were driving in their respective automobiles in the Lansing area." Shelton Coats argues that this was error because the trial court relied on the now-defunct "res gestae exception" to MRE 404(b) as well as because that evidence was irrelevant and unfairly prejudicial.[6] Shelton Coats also argues that he was deprived of his constitutional right to a fair trial based on the admission of this other-acts evidence.[7] While we agree that the trial court erred in relying on the now-defunct "res gestae exception" to MRE 404(b), we disagree with the remainder of defendant's arguments.[8]

We previously concluded that the trial court did not abuse its discretion in allowing the introduction of evidence of the defendants' gang membership pursuant to MRE 404(b)(1) with respect to Shetoan Coates and do so again with respect to Shelton Coats as well for the same

---

[6] Defendant does not elaborate as to what evidence he believes was erroneously admitted other than the quotations that we have cited. Because he briefly mentions the quoted material as "the 'other acts' that [the prosecutor] sought to bring to light" under his MRE 404(b) argument and various threatening statements made by Shetoan Coates under his constitutional argument, we are left to conclude that only this expressly mentioned evidence is challenged for purposes of this appeal, and we will limit our review accordingly.

[7] We feel compelled to point out that Shelton Coats's argument that he was deprived of his constitutional right to a fair trial by the admission of other-acts evidence and his argument that he was deprived of his constitutional right to due process because the codefendants' trials were joined are *identical* with the exception of one added sentence under the other-acts argument. The added sentence states as follows: "Notwithstanding a ruling by this court that the trial judge did not abuse his discretion by deciding prior to the trial that other acts evidence under MRE 404(b) would be allowed, the undue prejudice suffered by the defense is evident from the trial transcript." While we are able to decipher the gist of Shelton Coats's arguments and understand the overlap between the issues, we are perplexed by the fact that Shelton Coats's constitutional argument regarding the other-acts evidence relies entirely on law relating to severance, see, e.g., MCR 6.121(C), and does not mention anything relating to the constitutional right to a fair trial or other-acts evidence.

[8] As indicated above, there is no "res gestae exception" to MRE 404(b). *Jackson*, 498 Mich at 268. Nevertheless, as with Shetoan Coates, we conclude that the trial court did not err in admitting the other-acts evidence at issue despite its partial, erroneous reliance on this exception with respect to Shelton Coats as well. We also feel it necessary to point out that the trial court did not have the benefit of *Jackson* at the time the prosecutor filed its motion in limine seeking the admission of this other-acts evidence based, in part, on this now-defunct exception.

reasons. We similarly conclude that the evidence of the prior interactions between the parties was admissible under MRE 404(b)(1). Shelton Coats acknowledges that this evidence was relevant, but he maintains on appeal that it was unfairly prejudicial. However, as with the evidence of gang memberships, the prior interactions between the parties and the prior shootings were highly relevant to an understanding of defendants' motive and intent in committing the charged acts. These acts provided the rationale for the animosity between defendants and the complainants and helped explain why defendants would commit what might otherwise seem to be a random act of violence. With respect to the chase and arrest of Johnson and White-Beard, this evidence was also directly tied to the discovery of physical evidence, such as two handguns used in the various shootings. Furthermore, the evidence was not used, and did not have the tendency, to cause shock or outrage, nor was it cumulative, misleading, or confusing. Accordingly, the trial court did not abuse its discretion in determining that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice.

## B. JOINDER OF CODEFENDANTS' TRIALS

Shelton Coats also argues, for a variety of reasons, that the trial court erred in denying his request for a separate trial. We disagree.

We review a trial court's ultimate decision on a motion to sever the trials of codefendants for an abuse of discretion. *People v Hana*, 447 Mich 325, 346; 524 NW2d 682 (1994). A defendant does not have an absolute right to a separate trial. *People v Hoffman*, 205 Mich App 1, 20; 518 NW2d 817 (1994). Rather, there exists a strong policy that favors the conduct of joint trials in the interest of justice, judicial economy, and administration. *People v Etheridge*, 196 Mich App 43, 52-53; 492 NW2d 490 (1992). On a defendant's motion, the court must sever (1) offenses that are not related as defined in MCR 6.120(B) and (2) related offenses on a showing that severance is necessary to avoid prejudice to substantial rights of the defendant. MCR 6.121(B)-(C).

As it relates to MCR 6.121(B), offenses are related under MCR 6.120(B)(1) if they are based on the same conduct or transaction. Here, the charged offenses all arise out of the same incident—defendants' actions in the chase and assault of Taylor. Therefore, severance was not required under MCR 6.121(B).

As it relates to MCR 6.121(C), severance is mandated only when a defendant is able to clearly and affirmatively, by an affidavit or offer of proof, demonstrate (1) that his substantial rights will be prejudiced by the conduct of a joint trial and (2) that severance is the required method to rectify the potential prejudice. *Hana*, 447 Mich at 345-346. Severance should be granted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id*. at 359-360 (citation and internal quotation marks omitted omitted). Here, Shelton Coats claims that separate trials were necessary because his and Shetoan Coates's defenses were antagonistic. However, a mere allegation that a codefendant's defense is "antagonistic" is inadequate; severance is required only if the defenses are so antagonistic as to be mutually exclusive. *Hana*, 447 Mich at 350. Defenses are mutually exclusive "if the jury, in order to believe the core of the evidence offered on behalf of one defendant, must disbelieve the

core of the evidence offered on behalf of the codefendant." *Id*. (quotation marks and citation omitted).

In this case, neither defendant testified nor presented any witnesses. In his closing argument, Shelton Coats's trial counsel discussed inconsistencies in the witnesses' testimony, drawing specific attention to particular inconsistencies between the testimony and the prosecutor's theory that Shelton Coats was armed with a weapon during the car chase and subsequent attack at the car wash. Trial counsel also focused on the fact that Shelton Coats did not have a weapon, drugs, or any of Taylor's possessions when he was arrested. Shelton Coats's counsel additionally questioned Taylor's motive to lie due to his plea agreement and argued that Taylor could have been mistaken about who was chasing him. Counsel further argued that, even if the jury believed that Shelton Coats was involved, the fact that he may have kicked Taylor did not constitute evidence that he intended to kill him. While acknowledging that he was representing only Shelton Coats, his trial counsel also stated that the prosecutor did not present evidence that codefendant Shetoan Coates was even present, arguing ultimately that the prosecutor's theory of motive was not tenable for either codefendant. Similarly, Shetoan Coates's trial counsel adopted the arguments concerning inconsistencies and Taylor's motives that were earlier raised by Shelton Coats's attorney. Shetoan Coates's counsel also noted that Shetoan Coates had not been arrested at the scene nor attempted to flee from the police but instead turned himself in after his photo was displayed on a television show. Shetoan Coates's trial counsel noted that Taylor stated that his attacker had said that he "should" kill Taylor, not that he was going to do so, thus contradicting the prosecutor's argument that the attackers intended to kill Taylor. Contrary to Shelton Coats's claim on appeal, these theories of defense were not mutually exclusive. Rather, they were quite complimentary. In sum, each codefendant's theory at trial does not support Shelton Coats's argument that a separate trial was necessary to avoid prejudice to his substantial rights on appeal.

Shelton Coats also argues that separate trials were warranted because the similarity between his name and Shetoan Coates's name was likely to cause juror confusion. We disagree. The names Shetoan Coates and Shelton Coats are obviously similar. However, this similarity does not, as Shelton Coats claims, automatically result in a likelihood of juror confusion. Moreover, Shelton Coats has not provided any example in the record that might suggest a scenario where their similar names actually created a likelihood of confusion. He notes that Taylor testified that Shetoan Coates told him during the assault, "I should kill you," and then speculates that the similarity in their names may have caused the jury to inaccurately attribute this statement to him. The record does not support this argument. Indeed, the jury acquitted Shelton Coats of AWIM and convicted him of the lesser offense of AWIGBH. Only Shetoan Coates, the individual who allegedly said, "I should kill you," was convicted of AWIM at defendants' trial. Thus, the jury's verdict clearly refutes Shelton Coats's suggestion that the jury may have inaccurately attributed Shetoan Coates's statement to him. Moreover, the testimony concerning Shelton Coats's participation in the physical assault of Taylor and the extensive injuries sustained by Taylor during that assault was more than sufficient to support his AWIGBH conviction. Accordingly, the trial court did not abuse its discretion by rejecting this reason for severance.

We additionally reject Shelton Coats's argument that a separate trial was necessary to prevent the other-acts evidence involving Shetoan Coates from being admitted and used by the

jury against him. As discussed earlier the evidence of defendants' gang membership and the prior interactions between Shetoan Coates, Taylor, and Johnson was relevant to explain a motive for both defendants. Indeed, Shetoan Coates and Shelton Coats belonged to the same gang, and the evidence indicated that Taylor shot at Shelton Coats's home under the belief that both defendants lived there. Given the common links between Shetoan Coates and Shelton Coats, the other-acts evidence had similar relevance to each defendant. Accordingly, the trial court did not abuse its discretion by denying Shelton Coats's request for a separate trial.

## C. VOUCHING FOR A WITNESS'S CREDIBILITY

On appeal, Shelton Coats also argues that the prosecutor improperly vouched for Taylor's testimony by (1) eliciting from Taylor that he had agreed to testify "truthfully" as part of his plea agreement in his own criminal case and commenting on that testimony during closing argument, (2) telling the jury that, by testifying in this case, Taylor would be regarded as a "snitch" in prison, and (3) commenting that Taylor's testimony was corroborated by other evidence. We disagree.

Because Shelton Coats did not object to the prosecutor's questioning or comments at trial, this argument is unpreserved and reviewed for plain error affecting his substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). It is well settled that a prosecutor is free to argue from the facts that a witness should be believed. *People v McGhee*, 268 Mich App 600, 630; 709 NW2d 595 (2005). A prosecutor is also permitted to "comment on his own witnesses' credibility during closing argument, specifically when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes." *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004). However, a prosecutor is not permitted to vouch for the credibility of a witness by implying that he possesses "special knowledge" of the witness's truthfulness. *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009).

In this case, Taylor's plea agreement in his criminal case was admitted as an exhibit without objection. A portion of the agreement required Taylor to testify truthfully in this case. The prosecutor questioned Taylor regarding this aspect of his plea agreement and commented on the same during closing argument. Defense counsel also used the language in the plea agreement to argue that Taylor was required to testify against defendants regardless of whether the testimony was true or not. The prosecutor did not state or insinuate that he had special knowledge or a personal opinion regarding Taylor's actual truthfulness; rather, he only elicited, accurately, that Taylor's plea agreement required him to provide truthful testimony. Accordingly, we discern no plain error requiring reversal. Shelton Coats also argues that the prosecutor improperly told the jury that Taylor would be regarded as a "snitch" while in prison as a result of his testimony in this case. While this consequence of Taylor's testimony was not discussed during questioning, this supposition was something of which the jurors would be generally aware; that is, it did not involve special or secret knowledge. Further, there is nothing in the record to suggest that this brief comment, alone, requires reversal in light of the evidence discussed above and the trial court's instructions regarding the parties' arguments. Finally, the fact that the prosecutor noted that other testimony supported Taylor's version of events was not an improper call for the jury to rely on the prosecutor's special knowledge. Accordingly, each of defendant's prosecutorial-misconduct arguments lacks merit.

### D. OVS 3, 4, AND 14

Lastly, Shelton Coats argues that resentencing is required because the trial court erred in scoring OVs 3, 4, and 14 of the sentencing guidelines. We disagree.

Defendant's argument on appeal is evidentiary in nature only; that is, he does not raise a constitutional challenge. See *People v Biddles*, ___ Mich App ___, ___; ___ NW2d ___ (2016); slip op at 4-11; see also *People v Sours*, ___ Mich App ___, ___; ___ NW2d ___ (2016); slip op at 3. "Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013); *Biddles*, ___ Mich App at ___; slip op at 4. "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Hardy*, 494 Mich at 438; *Biddles*, ___ Mich App at ___; slip op at 4.

As it relates to OV 3, the record reflects that Shelton Coats stipulated to the scoring of OV 3 at 25 points. Therefore, he waived review of any claim that OV 3 was improperly scored. *People v Carter*, 462 Mich 206, 215-216; 612 NW2d 144 (2000); *Carines*, 460 Mich at 763 n 7. In any event, his argument on appeal is meritless because OV 3 was correctly scored. A court properly assesses 25 points for OV 3 where a "[l]ife threatening or permanent incapacitating injury occurred to a victim." MCL 777.33(1)(c). Testimony was presented that Taylor sustained several serious head lacerations as well as multiple fractures to his face and the back of his skull as a result of the altercation at issue in this case. These injuries caused internal brain hemorrhaging and swelling. A treating physician testified that that the injuries were potentially lethal. Thus, the trial court's 25-point score for OV 3 was supported by a preponderance of the evidence.

As it relates to OV 4, Shelton Coats challenges his 10-point score, arguing that no psychological injury occurred. A trial court is directed to score 10 points for OV 4 when "serious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a). Evidence was presented that while Taylor was in the hospital being treated for the injuries he received during the assault, he believed he would die due to the continued drainage from his nose, which led to anxiety that exacerbated a pre-existing post-traumatic stress disorder condition. He was prescribed Ativan and Zoloft for his anxiety and underlying mood disturbance. This evidence supports the trial court's finding that Taylor suffered a serious psychological injury that actually required professional treatment. Thus, the trial court's 10-point score for OV 4 was supported by a preponderance of the evidence.

As it relates to OV 14, Shelton Coats challenges the trial court's assessment of 10 points, arguing that this was not a multiple-offender situation. A score of 10 points for OV 14 is justified where the offender was a leader in a multiple offender situation. MCL 777.44(1)(a). In scoring this variable, the entire criminal transaction must be considered. MCL 777.44(2)(a). If three or more offenders were involved, more than one offender may be determined to have been a leader. MCL 777.44(2)(b). Three individuals were involved in the shooting and subsequent beating of Taylor— Shetoan Coates, Shelton Coats, and Johnson. Therefore, the trial court could find that Shelton Coats was a leader even if another offender could have also been a leader as well. As the trial court observed, the record reflects that Shelton Coats was the driver of the

vehicle and made the initial decision to pursue Taylor's vehicle. Shelton Coats, as the driver of the vehicle, had ultimate control in deciding whether to stop the escalation but decided to engage in a prolonged high-speed chase down residential streets. He also fully participated in beating Taylor at the car wash. Thus, when the entire criminal transaction is considered, the trial court's 10-point score over OV 14 was supported by a preponderance of the evidence.

## IV. CONCLUSION

Accordingly, in Docket No. 327501, we affirm Shetoan Coates's convictions, remand for further sentencing proceedings in light of *Lockridge*, and do not retain jurisdiction. In Docket No. 327902, we affirm Shelton Coats's convictions and sentences.

/s/ Kathleen Jansen
/s/ Kirsten Frank Kelly
/s/ Colleen A. O'Brien