# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

FERNANDUS CORTEZ ELLEN,

        Defendant-Appellant.

UNPUBLISHED
September 27, 2016

No. 325627
Wayne Circuit Court
LC No. 14-003019-FC

Before: BORRELLO, P.J., and MARKEY and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of voluntary manslaughter, MCL 750.321. The trial court sentenced him to 10 to 15 years' imprisonment, departing from the minimum range of 36 to 71 months' imprisonment calculated under sentencing guidelines. We affirm defendant's convictions, but remand for further proceedings consistent with this opinion.

## I. FACTUAL BACKGROUND

Defendant's conviction arises from his violent assault of Jonas Johnson, Jr., in Detroit, Michigan, on August 21, 2013. Eyewitnesses testified that defendant approached Johnson, who was sitting in front of an apartment building, and repeatedly asked him about a sexual act while tapping him with his phone. After asking defendant to stop tapping him and to stop disrespecting him multiple times, Johnson punched defendant in his head or neck. Defendant then struck Johnson, causing Johnson to fall backward and strike his head on the cement. Johnson did not move after falling on the ground, but defendant continued to hit, stomp, and kick his head. Defendant then used a nearby milk crate to strike Johnson's chest or head several more times. Johnson sustained severe injuries and never regained consciousness, dying in a medical rehabilitation facility on October 7, 2013.

The prosecution charged defendant with second-degree murder, MCL 750.317. Defendant was acquitted of that charge, but convicted of voluntary manslaughter, MCL 750.321, a lesser included offense of murder.

## II. PROSECUTORIAL MISCONDUCT

Defendant contends that the prosecutor violated his right to a fair trial by arguing in her rebuttal argument that the jury should convict him based on its civic duty. We disagree.

-1-

## A. STANDARD OF REVIEW

"Issues of prosecutorial misconduct are reviewed de novo to determine whether the defendant was denied a fair and impartial trial." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). We review prosecutorial misconduct claims on a case-by-case basis, examining the prosecutor's remarks in context. *People v Mann*, 288 Mich App 114, 119; 792 NW2d 53 (2010); *People v Dobek*, 274 Mich App 58, 63-64; 732 NW2d 546 (2007). "Prosecutorial comments must be read as a whole and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial." *People v Brown*, 279 Mich App 116, 135; 755 NW2d 664 (2008).

## B. ANALYSIS

Defendant is correct that "prosecutors should not resort to civic duty arguments that appeal to the fears and prejudices of jury members[.]" *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995); see also *People v Unger*, 278 Mich App 210, 237; 749 NW2d 272 (2008). Here, however, the prosecutor did not "appeal to the jury's civic duty by injecting issues broader than guilt or innocence or encouraging jurors to suspend their powers of judgment." *People v Thomas*, 260 Mich App 450, 455-456; 678 NW2d 631 (2004). Rather, the prosecutor's rebuttal argument properly responded to arguments raised by the defense.

During his closing argument, defense counsel vigorously attacked the sufficiency of the prosecution's proofs. He also maintained, through a variety of approaches, that defendant did not instigate the altercation and that his repeated blows were a reasonable exercise of self-defense in response to Johnson's punch, which started the fight. In discussing defendant's behavior, he specifically invoked the jury's notions of common sense, stating, "And your commonsense, your commonsense, is that starting a fight? Even if you want to believe that evidence [regarding defendant's conduct], is that starting a fight?" Similarly, defense counsel later stated, "And what's normal about a fight? What's reasonable common sense?" Defense counsel also claimed that the prosecution wanted the jury to believe that defendant was "a bad actor," in light of the fact that "he's come up in the streets," and convict him on that basis.

During her rebuttal argument, the prosecutor responded to defense counsel's various attacks on the adequacy of the proofs and concluded as follows:

> [The victim] was not some horrible scary person[;] he was sick. . . . [T]hey [the defense] described the victim as [a zombie from the Walking Dead]. And by all means this is all his fault. Because how dare you tell me, Mr. 23-year-old, poor me, hey, hey, look at these photos. How dare you tell me to stop doing that. How dare you. And if I take a swing because you ain't getting the message[,] I get to do whatever I want back to you. This is the best self-defense case [defense counsel has] ever seen? Ladies. [sic]

> And gentlemen [sic] this is your world[;] you're creating it. This is your community. You're deciding what you want is acceptable and not acceptable --

* * *

-2-

You get to decide was [the victim] this big bully, this scary individual, that [defendant] had to endure this? Defense called this a dog fight[,] that he's in a fight for his life. Seriously? Or was this just some animal that created the situation and when this man old enough to be his dad said you know what little punk I'm tired of[] this stuff and takes a swing[,] [defendant] relentlessly just beat this man to the point that he put him in a coma where he languished and died. You get to decide that and we will respect your decision.

Contrary to defendant's characterization of the prosecutor's rebuttal argument, it is apparent that her statements were directly related to the evidence admitted at trial and that her arguments, in effect, urged the jurors to rely on their common sense to determine whether defendant's behavior was a reasonable means of self-defense under the circumstances. See *Brown*, 279 Mich App at 135. Likewise, it is clear that the prosecutor's references to the jury's "world" and "community" and acceptable modes of behavior in those environments were directly related to defense counsel's appeal to the jury's "commonsense" notions of reasonable conduct during a fight. The prosecutor did not raise "civic duty arguments." See *Bahoda*, 448 Mich at 282.

"[W]e do not review the prosecutor's remarks in . . . a vacuum; the remarks must be read in context. This scope of review is important because an otherwise improper remark may not rise to an error requiring reversal when the prosecutor is responding to the defense counsel's argument." *People v Kennebrew*, 220 Mich App 601, 608; 560 NW2d 354 (1996) (citations omitted). Given defense counsel's closing argument, we reject defendant's claim of prosecutorial misconduct.

## III. EVIDENTIARY CLAIMS

### A. STANDARD OF REVIEW

We "review[] for an abuse of discretion the trial court's decision to admit or exclude evidence." *People v Lane*, 308 Mich App 38, 51; 862 NW2d 446 (2014). "[A] trial court abuses its discretion when its decision falls outside the range of principled outcomes or when it erroneously interprets or applies the law." *Id*. (footnotes omitted). However, "[w]e review de novo the preliminary questions of law surrounding the admission of evidence, such as whether a rule of evidence bars admitting it." *Id*.

### B. ANALYSIS

#### 1. PRIOR ACT EVIDENCE

Defendant first argues that the trial court erred when it allowed the prosecutor to ask prosecution witness Ashley Nobles a question regarding defendant's prior possession of guns. Although he cites both MRE 404(a) and (b), the gravamen of defendant's claim is that (1) the prosecutor's questioning was improper because it did not fulfill any of the exceptions allowing the admission of propensity evidence under MRE 404(b), and (2) even if it did, it was unfairly

prejudicial and should have been excluded under MRE 403.[1]  Defendant also contends that the evidence should have been excluded because the prosecution failed to provide pretrial notice as required under MRE 404(b)(2).  We conclude that reversal is not warranted on these grounds.

Under MRE 404(a), "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion" unless it fulfills one of the enumerated exceptions to the general rule.  Likewise, under MRE 404(b), evidence of a defendant's "other crimes, wrongs, or acts" is generally inadmissible to demonstrate the defendant's propensity to act in conformity with those acts.  *People v Starr*, 457 Mich 490, 494; 577 NW2d 673 (1998).  However, other-acts evidence may be admissible under MRE 404(b) for noncharacter purposes, such as to establish "proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material[.]"  MRE 404(b)(1); *Starr*, 457 Mich at 495-496. MRE 404(b) is "a rule of inclusion," and the list of proper, noncharacter purposes under the rule is nonexclusive.  *Starr*, 457 Mich at 496.  See also *People v Sabin (After Remand)*, 463 Mich 43, 55-56; 614 NW2d 888 (2000) (stating the elements for the proper admission of evidence under MRE 404(b)), citing MRE 104(b), MRE 402, MRE 403, MRE 404(b), and *People v VanderVliet*, 444 Mich 52, 74-75; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994).

During defense counsel's cross-examination of Nobles, he elicited testimony that violence was common in the vicinity of the assault and that Nobles always had to remain "on guard" "in that neighborhood."  On redirect examination, the prosecutor asked Nobles if she knew whether defendant had "pulled guns on other people[.]"  Defense counsel objected that the question was improper.  The trial court overruled the objection, reasoning that defense counsel had "opened the door on . . . the kind of neighborhood this was."  The prosecution then continued to question Nobles as follows:

> *Q*.  Do you know whether or not the Defendant pulled guns on other people, if you know?
>
> *A*.  No, I didn't know -- I know that my brother had been arrested for a gun because I was there when the officers arrested my brother and I came out to see what was going on.  I didn't see the Defendant anywhere around.  And my brother never mentioned and I never knew that[.]  I just thought they found a gun on my brother and that's what he served his time for, but I never knew it was for the Defendant.
>
> *Q*.  Do you know what the Defendant's reputation was in that building?
>
> *A*.  No.

---

[1]  MRE 403 provides, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

We agree with defendant that the trial court erred in allowing the prosecutor's question regarding defendant's previous gun-related conduct on the basis that defense counsel had "opened the door" to the questioning. We also agree that the trial court's ruling violated MRE 404, as the prosecutor failed to identify a proper basis for admission of the evidence under MRE 404, and it is not clear from the record that the questioning was intended to elicit evidence for a noncharacter purpose pursuant to MRE 404(a)(1) or (b).

Nevertheless, any error related to the prosecutor's questioning was harmless. See *People v Whitaker*, 465 Mich 422, 426; 635 NW2d 687 (2001). "If the court's evidentiary error is nonconstitutional and preserved, then it is presumed not to be a ground for reversal unless it affirmatively appears that, more probably than not, it was outcome determinative—i.e., that it undermined the reliability of the verdict." *People v Douglas*, 496 Mich 557, 565-566; 852 NW2d 587 (2014) (quotation marks and citation omitted). See also MCL 769.26; MCR 2.613(A); *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999) (analyzing MCL 769.26).

Nobles denied that she had any knowledge of whether defendant had "pulled guns on other people" or any knowledge of defendant's reputation in the apartment building. Accordingly, the improper questioning did not produce any inadmissible character evidence. Further, the trial court instructed the jury that the attorneys' questions did not constitute evidence and that the jury had to determine the facts solely based on the evidence presented at trial. We presume that jurors follow their instructions. *Unger*, 278 Mich App at 235. Additionally, extensive, properly admitted evidence supported the jury's verdict, including the testimony of four eyewitnesses who similarly described defendant's assault of Johnson.

Therefore, because it does not appear more probable than not that the error was outcome determinative, the prosecutor's questioning is not a ground for reversal.

## 2. SPECULATIVE TESTIMONY

Next, defendant challenges the admission of prosecution witness Nicole Robinson's testimony regarding the meaning of the term "head shots." He contends that her statements were "inadmissible to prove [defendant's] state of mind on the particular occasion," should have been excluded under MRE 701, and were "highly prejudicial." We disagree that her testimony warrants reversal.

At trial, Robinson testified that defendant repeatedly tapped Johnson with his arm while making remarks about "head shots." When the prosecutor asked Robinson, "What do you mean?", defense counsel objected on the basis of speculation, contending that Robinson could not "speculate [regarding] what [defendant] meant by head shots." The trial court ruled that Robinson's response was not speculation and asked the prosecutor to "clean this up[.]" In response to further questioning, Robinson testified that defendant "kept saying head shots." When the prosecution asked Robinson to explain her understanding of that term, Robinson stated, "[H]e wanted him to suck his thing." Defense counsel objected again, arguing that there was no foundation for Robinson's testimony.

The trial court then discussed defense counsel's objection outside the presence of the jury. It noted that the term "head shots" had been used by the parties during opening statements and rejected defense counsel's claim that a mistrial was warranted. It also reasoned that Robinson's testimony was relevant because "what allegedly provoked Mr. Johnson" was pertinent to defendant's theory of self-defense given the fact that Johnson "took the first swing." Additionally, the trial court stated, "Now, if you [defense counsel] feel that she's laid an inadequate foundation about what a head shot is perhaps she can cure it. This might be some sort of vernacular that perhaps we can cure[,] but it's not a basis for a mistrial." Reiterating its previous reasoning, the court then concluded, "[Robinson] can testify to what she believes a head shot is and you're free to cross examine her[.]" When Robinson continued her testimony, she again stated that defendant "kept on tapping [Johnson] about some head shots," and that Johnson subsequently punched defendant. No additional foundation was laid for her interpretation of "head shots."[2]

On appeal, defendant argues that the prosecutor failed to lay a proper foundation for Robinson's knowledge of the definition of "head shots." As such, defendant contends that Robinson's testimony was "merely speculation as to what [defendant] meant by saying headshots." He also contends that her testimony was unduly prejudicial and violated MRE 701 because "the central issue of the trial was wholly concerned around what [defendant] did after Mr. Johnson punched him," and it was undisputed that Johnson started the fight by punching defendant. Thus, defendant contends Robinson's testimony regarding the meaning of the term "was not helpful to a clear understanding of her testimony or the determination of a fact in issue, because it was not in issue that Mr. Johnson started the fight."

MRE 701 provides, "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Speculative evidence, however, is inadmissible under MRE 403. *Phillips v Deihm*, 213 Mich App 389, 401-402; 541 NW2d 566 (1995).

Contrary to defendant's claims on appeal, Robinson's explanation of the meaning of "head shots" provided assistance in understanding her testimony and determining the circumstances of the crime, which were facts in issue relevant to the prosecution's case-in-chief and the viability of defendant's theory of self-defense.[3] But, as defendant contends, although the

---

[2] Later in the trial, Andrea Thompson provided a definition of "head shots" that was nearly identical to Robinson's understanding of the term. Defendant does not challenge Thompson's testimony on appeal.

[3] See MRE 401 (defining "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"); MRE 402 ("All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Michigan, these rules, or other rules adopted by the Supreme Court.

language apparently is part of accepted street lexicon, the prosecution provided no foundation for Robinson's knowledge of the meaning of "head shots." As such, her statements were not properly admitted as lay opinion testimony under MRE 701. See MRE 701(a).[4]

Nevertheless, defendant's own argument on appeal indicates that the admission of this testimony was harmless. Defendant claims that "the central issue of the trial was wholly concerned around what [defendant] did after Mr. Johnson punched him." Thus, by defendant's own admission, Robinson's testimony regarding the meaning of "head shots" did not relate to the most critical issue at trial.

We similarly conclude that it is unlikely that Robinson's testimony concerning street linguistics was outcome-determinative. See *Douglas*, 496 Mich at 565-566; *Lukity*, 460 Mich at 495-496. In light of defendant's self-defense theory, the evidence admitted at trial and the parties' arguments primarily focused on the nature and duration of defendant's assaultive conduct and whether defendant's response to Johnson's blow was reasonable under the circumstances. See *People v Dupree*, 486 Mich 693, 707; 788 NW2d 399 (2010). To the extent that defendant's conversation with Johnson prior to Johnson's punch was relevant to the prosecution's case and defendant's self-defense theory, it is not more probable than not that Robinson's testimony was outcome determinative given the additional evidence—independent from the specific meaning of "head shot"—showing that defendant initiated the conflict by repeatedly touching Johnson and making statements that offended him, despite Johnson's requests that defendant stop, and (2) the overwhelming evidence of defendant's extended acts of violence in response to Johnson's single punch. Further, contrary to defendant's claim on appeal, Robinson expressly testified that the definition of "head shots" that she provided was her own understanding of the term. She never indicated any knowledge that defendant's use of the term was consistent with her personal understanding of it.

Evidence which is not relevant is not admissible."); *People v Dupree*, 486 Mich 693, 707; 788 NW2d 399 (2010) (indicating that, in general, a defendant does not act in justifiable self-defense when he uses excessive force or when he is the initial aggressor); *People v Townes*, 391 Mich 578, 592; 218 NW2d 136 (1974) (noting that a defendant "may only be held legally accountable as an aggressor for responsive conduct by another that is reasonably attributable to [his] own conduct"); *People v Goecke*, 457 Mich 442, 463-464; 579 NW2d 868 (1998) ("The elements of second-degree murder are: (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse."); *People v Tierney*, 266 Mich App 687, 714; 703 NW2d 204 (2005) (stating that voluntary manslaughter requires a finding "(1) the defendant killed in the heat of passion; (2) the passion was caused by adequate provocation; and (3) there was no lapse of time during which a reasonable person could have controlled his passions.").

[4] Courts from other jurisdictions applying substantively identical rules of evidence in similar circumstances have required a party to establish a foundation for how a lay witness learned the meaning of a slang term through his or her personal experiences, even if only through everyday means of language acquisition, in order for the evidence to be admitted as lay opinion testimony. See, e.g., *United States v Saulter*, 60 F3d 270, 276 (CA 7, 1995); *King v United States*, 74 A3d 678, 680-684 (DC Ct App, 2013); *Chesser v State*, 30 So 3d 625, 626-629 (Fla Dist Ct App, 2010) (providing an example of a case, distinct from the instant case, where the error was not harmless); *State v Johnson*, 309 NJ Super 237, 262-264; 706 A2d 1160 (1998).

We find no basis for concluding that the admission of Robinson's testimony affected the outcome of the proceeding or undermined the reliability of the jury's verdict. See MCL 769.26; MCR 2.613(A); *Douglas*, 496 Mich at 565-566.

## IV. DEFENDANT'S DEPARTURE SENTENCE

Lastly, defendant contends that the trial court improperly departed from the minimum range calculated under the sentencing guidelines range based on factors already taken into account by the guidelines, thereby entitling him to resentencing or, at a minimum, a *Crosby*[5] remand pursuant to *People v Steanhouse*, 313 Mich App 1; 880 NW2d 297 (2015), lv granted 499 Mich 934 (2016), and *People v Shank*, 313 Mich App 221; 881 NW2d 135 (2015). We agree that this case must be remanded for further proceedings.

After defendant was sentenced on December 19, 2014, the Michigan Supreme Court effectuated significant changes to Michigan's sentencing scheme through *People v Lockridge*, 498 Mich 358, 364-365, 391-392; 870 NW2d 502 (2015). *Lockridge* held, *inter alia*, that the minimum range calculated under the sentencing guidelines is now advisory, and a trial court is no longer required to provide a substantial and compelling reason for a departure sentence. *Id*. at 364-365, 391-392. Additionally, under *Lockridge*, the proper inquiry on appeal is whether defendant's departure sentence is reasonable. *Shank*, 313 Mich App at 224-225; *Steanhouse*, 313 Mich App at 42; *People v Terrell*, 312 Mich App 450, 462; 879 NW2d 294 (2015).

However, the *Lockridge* Court did not set forth a procedure for reviewing a sentence for reasonableness. *Shank*, 313 Mich App at 224; *Steanhouse*, 313 Mich App at 42. Consequently, the *Steanhouse* Court adopted the "principle of proportionality" that was previously in use under *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990), and "h[e]ld that a sentence that fulfills the principle of proportionality under *Milbourn*, and its progeny, constitutes a reasonable sentence under *Lockridge*." *Steanhouse*, 313 Mich App at 46-48. In addition, the *Steanhouse* Court established the following procedure for reviewing a defendant's departure sentence:

> Given our conclusion that the principle of proportionality established under *Milbourn*, and its progeny, is now the appropriate standard by which a defendant's sentence should be reviewed, we find that the procedure articulated in *Lockridge*, which is modeled on the procedure adopted in *United States v Crosby*, 397 F3d 103, 117-118 (CA 2, 2005), should apply here. *Lockridge*, 498 Mich at 395-399. As recently stated by this Court in *People v Stok*es, 312 Mich App 181, 200-201; 877 NW2d 752 (2015), "the purpose of a *Crosby* remand is to determine what effect *Lockridge* would have on the defendant's sentence so that it may be determined whether any prejudice resulted from the error." While the *Lockridge* Court did not explicitly hold that the *Crosby* procedure applies under the circumstances of this case, we conclude that this is the proper remedy when, as in this case, the trial court was unaware of, and not expressly bound by, a

---

[5] *United States v Crosby*, 397 F3d 103 (CA 2, 2005).

reasonableness standard rooted in the *Milbourn* principle of proportionality at the time of sentencing.

> "[T]he *Crosby* procedure offers a measure of protection to a defendant. As the first step of this procedure, a defendant is provided with an opportunity 'to avoid resentencing by promptly notifying the trial judge that resentencing will not be sought.' " *Stokes*, 312 Mich App at 201, quoting *Lockridge*, 498 Mich at 398. Given the possibility that defendant could receive a more severe sentence, defendant should be provided the opportunity to avoid resentencing if that is his desire. *Stokes*, 312 Mich App at 202. Accordingly, we remand this matter to the trial court to follow the *Crosby* procedure outlined in *Lockridge*. Defendant "may elect to forgo resentencing by providing the trial court with prompt notice of his intention to do so. If 'notification is not received in a timely manner,' the trial court shall continue with the *Crosby* remand procedure as explained in *Lockridge*." *Stokes*, 312 Mich App at 203, quoting *Lockridge*, 498 Mich at 398. [*Steanhouse*, 313 Mich App at 48-49, lv granted 499 Mich 934 (2016); see also *Shank*, 313 Mich App at 226.]

As in *Steanhouse* and *Shank*, the trial court in this case imposed a departure sentence without considering the advisory nature of the sentencing guidelines and without an opportunity to adhere to the standard of reasonableness rooted in the *Milbourn* principle of proportionality. Thus, in accordance with *Steanhouse*, a remand is necessary so that the court may implement the *Crosby* remand procedure as articulated in *Lockridge*.[6]  See *Shank*, 313 Mich App at 226; *Steanhouse*, 313 Mich App at 48-49.

## V. CONCLUSION

Defendant has failed to establish that any of his claims of error on appeal warrant reversal. However, remand is necessary because the trial court imposed an upward departure sentence before *Lockridge* and *Steanhouse* were decided. As a result, the court must have an opportunity to consider the fact that the sentencing guidelines are advisory and that sentencing decisions are now subject to the standard of reasonableness articulated in *Steanhouse*.

We affirm defendant's conviction, but remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Jane E. Markey
/s/ Michael J. Riordan

---

[6] The propriety of a remand is especially evident in this case, as it is apparent from the trial court's ruling on the record and the sentencing memorandum that it prepared prior to sentencing that the court sentenced defendant specifically based on the "substantial and compelling reasons" standard that no longer exists after *Lockridge*, 498 Mich at 364-365, 391-392.